D. S. WALTON & CO. *v.* UNITED STATES (No. 2793[1])

United States Court of Customs Appeals, May 7, 1928

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

[Oral argument April 13, 1928, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal by importer from the judgment of the Board of General Appraisers (now the United States Customs Court) denying a petition for remission of additional duties brought under section 489 of the Tariff Act of 1922.

It is unnecessary to quote the entire section, but sufficient to say that it provides that the petition shall not be granted unless the petitioner supports the same by—

satisfactory evidence * * * that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to

[1] T. D. 42756.

defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

A brief statement relating to the facts and the issues in the case was made by importer's counsel at the hearing before the Board of General Appraisers, as follows:

The issue in this case, your honors, covers an importation of machine glazed pure sulphite wrapping paper from Germany. It is invoiced at $4.25 per hundred pounds. The appraisement was made on a basis of German gold marks 46.05 per hundred kilos. That appraisement was based upon a statement in the lower part of the invoice which, after recitation of the various charges, states that the home market prices amount to the equivalent of the appraised value.

Mr. Walton, on behalf of the petitioners, testified in substance that he was familiar with the importation; that he believed he examined the invoice before sending it to the customs broker for entry. When asked if he noticed a statement on the bottom of the invoice citing the home market value in gold marks 46.05 he said, "No, I don't recall having seen it." He said that the price paid by his firm was $4.25 United States money per 100 pounds; that at the time he turned the papers over to the broker for making the entry he had no knowledge of any other price than the purchase price; that the goods were bought in the open market in the usual course of business; that as far as he knew the invoice price represented the fair market value for export purposes; that he instructed the broker by letter to make the entry at the price shown on the consular invoice; that he did not notice the statement at the foot of the invoice, if he had he would have called attention to it; that he did not intend to mislead or deceive the appraiser or defraud the revenue of the Government; that he had no knowledge "that there was any other price than the purchase and the invoice price as the foreign market value of this merchandise at the time the entry was made;" that evidently he did not examine the invoice very carefully; that he only had it about an hour before sending it to the broker; that he took no steps to obtain information as to the market value; that he assumed that $4.25 per 100 pounds was the correct market value, as it was the price which they paid.

Mr. Prichard, who was connected with the firm of brokers who made the entry in question, testified that he was familiar therewith; that he had received written instructions from the importer concerning the same. They were produced in evidence and were as follows:

Please enter this shipment at the price shown on the invoice, less usual charges, adding the tax.

He further testified that at the time of entry he did not notice the memorandum referred to on the bottom of the invoice; that if he had noticed it he would have taken the matter up with the importer, pointed out to him the discrepancy between the invoice value and

what purported to be the market value; that "to a great extent we rely upon the importer's instructions, showing that he has gone into the question of the value; but if we discover anything that will help him, we call it to his attention."

In its written opinion the board said:

> There appears at the foot of the invoice the statement—
> "The home market prices amount to G. M. (gold marks) 46.05," and a representative of the importing firm, testifying in support of the petition, stated that when he examined the invoice preparatory to transmitting it to the customs brokers with a letter of instructions (Exhibit 1) he failed to notice the said statement of home-market value. It is rather remarkable that the clerk in the brokerage firm who prepared the entry paper also failed to note on the invoice the statement of home-market value, while at the same time stating that the letter of instruction to enter at the invoice price would control his action.   *   *   *
> It is very clear that no one for or on behalf of the importing firm made the slightest inquiry or investigation with the view of being advised as to whether either the invoice price or the statement of home market value equaled either the actual home market value or the export value of such merchandise on the date of its shipment. Neither is any explanation given of the fact that the invoice and entered price was 30 per centum below the home market value as stated by the seller.

It held, in effect, that the importer had not discharged the burden resting upon it of establishing good faith and honesty of purpose, and denied the petition.

Importer argues, on this state of the record, that the fact that the invoice accompanying the entry recited the facts which gave the appraiser the information upon which he acted in appraising the merchandise, is wholly inconsistent with the view that the importer intended to mislead or defraud the appraiser or any Government official. There is force in this argument, and had the board found in accordance with the importer's contention, we probably would not disturb the finding. It must be remembered, however, that the board saw the witnesses. Its opinion, as quoted, indicates that it hesitated to give entire credence to some of the testimony.

Whenever the tribunal which finds the facts actually sees a witness and hears his testimony, its views as to the credence to be given thereto are important on review. The invoice, which is before us, shows that the entry thereon which appears to have escaped the notice of both the importer and broker is not more than four lines below the last of the other relevant entries, is perfectly plain, and should, it would seem, have been easily apparent to a casual observer. The comment by the board that the failure to notice it was "rather remarkable" seems justified. But, however this may be, we think, in principle, this case is ruled by *Stone & Downer Co. v. United States*, 14 Ct. Cust. Appls. 439, T. D. 42061, in which a question quite analogous to the one here presented was considered and decided adversely to the petitioners there.

The judgment below is *affirmed.*